```
                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF OHIO
                         WESTERN DIVISION
```

BRUCE E. RICKER, individually  :
and on behalf of all others    :
similarly situated,            :
                               :    NO. 1:11-CV-00490
        Plaintiff,             :
                               :
     v.                        :    **OPINION & ORDER**
                               :
ZOO ENTERTAINMENT, INC.,       :
 et al.,                       :
                               :
                               :
        Defendants.            :

This matter is before the Court on Defendants' Motion to Dismiss (doc. 17) and the responsive memoranda (docs. 26 & 28). The Court held a hearing on the motion on May 10, 2012.

This is a class action for securities fraud brought pursuant to Section 10(b) of the Securities and Exchange Act of 1934 (the "Act"), Section 20(a) of the Act, and Rule 10b-5, which was promulgated thereunder.  In essence, Plaintiff alleges that Defendants made false and misleading statements when they filed financial statements that later needed to be restated.  Defendants have filed a motion seeking the dismissal of Plaintiff's Complaint, which presents the Court with, at base, two issues: (1) whether the Complaint pleads fraud with particularity and properly pleads a strong inference of scienter; and (2) whether the Complaint adequately pleads loss causation.

For the reasons that follow, the Court GRANTS Defendants' motion (doc. 17).

## I. Background

This matter was filed as a securities class action suit on behalf of all persons who purchased or otherwise acquired the common stock of Zoo Entertainment Group, Inc. between May 17, 2010 and April 15, 2011, against Zoo and some of its officers for alleged violations of the Act (doc. 14). Defendant Zoo Entertainment Group, Inc. ("Zoo" or the "company") is in the interactive computer games business. On May 17, 2010, Zoo filed its quarterly report with the Securities and Exchange Commission and issued a press release that detailed the company's results for that quarter (Id.). Included with each of these were the company's unaudited financial statements for the quarter (Id.). Zoo then filed quarterly statements and press releases in August and November 2010, and again included financial statements (Id.).

However, on April 15, 2011, Zoo filed a Form 8-K report with the Securities and Exchange Commission in which it disclosed that it had erred "in recording certain transactions in the Company's previously filed unaudited consolidated financial statements" for those first three quarters of 2010, and Zoo warned its investors that they should no longer rely on those financials (Id.). In that Form 8-K, Zoo restated its financials for that time period. On that same date, two other announcements regarding Zoo were made: (1) Zoo issued a press release summarizing its 2010 finances, in which it noted that its fourth quarter results were

significantly lower than expected because of an erosion in certain aspects of the gaming market; and (2) Zoo's independent auditors issued a "going concern" opinion, in which, noting that "the Company ha[d] both incurred losses and experienced net cash outflows from operations since inception," the auditors expressed "substantial doubt about the Company's ability to continue as a going concern" (Id.). The price of Zoo common stock subsequently fell 34.3%, from an April 15, 2010 close of $4.40 per share to an April 18, 2010 close of $2.89 on 1.045 million shares traded (Id.).

Plaintiff brings two causes of action. In Count I, Plaintiff claims that Defendants violated Section 10(b) of the Act and Rule 10b-5 promulgated thereunder by "knowingly or recklessly disregarding the truth for the purpose and effect of concealing Zoo's true financial and operating condition from the investing public and supporting the artificially inflated price of its publicly traded common stock" (Id.). In Count II, Plaintiff claims that Defendants Fremed and Seremet, as controlling persons of Zoo, violated Section 20(a) of the Act because they had "the power to control or influence the particular transactions giving rise to the securities violations alleged in the complaint" (Id.).

## II. The Applicable Legal Standards

Typically, a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) requires the Court to determine whether a cognizable claim has been pled in the

complaint. The basic federal pleading requirement is contained in Fed. R. Civ. P. 8(a), which requires that a pleading "contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Westlake v. Lucas, 537 F.2d 857, 858 (6th Cir. 1976); Erickson v. Pardus, 551 U.S. 89 (2007). In its scrutiny of the complaint, the Court must construe all well-pleaded facts liberally in favor of the party opposing the motion. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). A complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Courie v. Alcoa Wheel & Forged Products, 577 F.3d 625, 629-30 (6th Cir. 2009), quoting Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009), citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

However, in the securities fraud context, a heightened pleading standard applies to certain aspects of the complaint. Section 10(b) of the Securities Exchange Act and Rule 10b–5 promulgated thereunder prohibit "fraudulent, material misstatements or omissions in connection with the sale or purchase of a security." Frank v. Dana Corp., 547 F.3d 564, 569 (6th Cir. 2008) (citation omitted). To state a securities fraud claim under Section 10(b), a plaintiff "'must allege, in connection with the purchase or sale of securities, the misstatement or omission of a material fact, made with scienter, upon which the plaintiff justifiably relied and which proximately caused the plaintiff's

injury.'" Id. (quoting In re Comshare, Inc., 183 F.3d 542, 548 (6th Cir. 1999)). Scienter is "a mental state embracing intent to deceive, manipulate, or defraud." PR Diamonds, Inc. v. Chandler, 364 F.3d 671, 681 (6th Cir. 2004) (quoting Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193 n. 12 (1976)).

Securities fraud claims arising under Section 10(b) must satisfy the particularity pleading requirements of Federal Rule of Civil Procedure 9(b). PR Diamonds, Inc., 364 F.3d at 681. A plaintiff's complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Frank, 547 F.3d at 570 (citation omitted). In addition, the PSLRA imposes additional and more "[e]xacting pleading requirements" for pleading scienter in a securities fraud case. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 313 (2007). Under the PSLRA's heightened pleading requirements, any private securities complaint alleging that the defendant made a false or misleading statement must:

> (1) ... specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed [and]
> (2) ... state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.
> 15 U.S.C. § 78u–4(b)(1), (2) (emphasis added).

The PSLRA "requires plaintiffs to state with

5

particularity both the facts constituting the alleged violation, and the facts evidencing scienter, i.e., the defendant's intention to deceive, manipulate, or defraud." Tellabs, 551 U.S. at 313 (quotation and citation omitted).

**III. Plaintiff's Complaint Fails to Meet the Heightened Pleading Standard**

The essential question before the Court at this stage is what did Defendants know about the financial statements at issue, and when did they know it, or, in the recklessness vernacular, what did Defendants "conscious[ly] disregard" and when. See, e.g., Comshare, 183 F.3d at 550. Unfortunately for Plaintiff, the Court cannot infer the answer to that question on the basis of the allegations set forth in the amended Complaint.

As noted above, when a plaintiff pleads securities fraud, the complaint is subjected to heightened scrutiny. The complaint must set forth with specificity the statements that are alleged to be false and the who, what, when, where and why with respect to the statements. Frank, 547 F.3d at 570. In addition, the complaint must set forth sufficient facts from which the Court can draw a strong inference of scienter. Tellabs, 551 U.S. at 313. Because the Complaint fails to set forth facts supporting a strong inference of scienter, the Court need not reach the issue of whether the Complaint satisfactorily identifies the particular statements alleged to be fraudulent and the reasons therefor.

Plaintiff's allegations supporting an inference of scienter include that Zoo's biggest account, Cokem, was poorly managed and that Defendants Seremet and Fremed were aware of this; that Defendants Seremet and Fremed regularly received internal financial reports; and that the company had weak internal controls, all of which effectively put the company and its controlling persons on notice that Zoo's financial statements couldn't be accurate and were, thus, false. In addition, Plaintiff argues that the size of the restatement, the departure of certain directors and executives after the restatement was issued, and Defendants' need to raise "desperately needed capital" for Zoo all support an inference of scienter (doc. 26).

Plaintiff's Complaint rests heavily on allegations regarding the mismanagement of the Cokem account, which Plaintiff contends provided Zoo management with red flags that they then disregarded. Specifically, Witness 3, a confidential witness who worked in accounting throughout the relevant time period, alleges that she was prohibited from getting clarity on Cokem billing, accounts receivable and collection issues because the salesman in charge of that account refused to allow anyone else to have contact with Cokem. Plaintiff alleges that Defendants allowed this salesman unfettered discretion and control over Zoo's largest customer, and the red flags that resulted from this unfettered control should have caused Defendants to question whether the

7

company met the GAAP[1] preconditions for revenue recognition with respect to Cokem.  For example, Zoo's revenue recognition policy, in keeping with GAAP, allowed the recognition of revenue when, <u>inter alia</u>, "collection of the customer receivable is deemed probable."[2]  Witness 3 alleges that Cokem's account was always past due; that, when Zoo did collect from Cokem, the amounts were less than the amounts Cokem owed; and that Cokem returned a large volume of product, all of which was known to Defendants.  Plaintiff thus contends that Defendants were aware that the required preconditions for recognizing Cokem's revenue were not in place–as, <u>e.g.</u>, collection could not reasonably be deemed probable–and argues that this awareness creates a strong inference that Defendants acted recklessly in disseminating the erroneous financial statements.

Plaintiff also points to the size of the restatement, the company's weak internal controls, the departure of certain directors and executives after the restatement was issued, and

---

[1] GAAP stands for Generally Accepted Accounting Principles and is a set of standards and procedures that companies use to create their financial statements.  Some of the standards are set by policy boards such as, for example, the Financial Accounting Standards Board and some are simply commonly accepted ways of recording and reporting financial information.

[2] GAAP, and Zoo's internal policy, recognize four preconditions to revenue recognition: (1) that there be persuasive evidence of a final understanding between the parties as to the specific nature and terms of the agreed-upon transaction; (2) that delivery has occurred or services have been rendered; (3) that the seller's price to the buyer is fixed or determinable; and (4) that collectability is reasonably assured. <u>See</u> doc. 14, citing SEC Staff Accounting Bulletin No. 104.

Defendants' need to raise "desperately needed capital" to support the inference of scienter.  Specifically, Plaintiff alleges that, while the revenue overstatement was only 3%, the company overstated net income by 660% and diluted earnings per share by 900%, and Plaintiff asserts that the overstatement of net income is "at least an equally plausible inference supporting scienter than the relatively small amount of the revenue overstatement tending to undermine it" (doc. 26).  In addition, Plaintiff notes that the salesman in charge of the Cokem account left the company shortly after the restatements were filed, and shortly thereafter, a company director and member of the Audit Committee as well as the company's Chief Operating Officer also left the company.  Further, Plaintiff alleges that the company "desperately needed capital" and that the original financial statements "were instrumental in enhancing Zoo's presentation to investors" (Id.).  Thus, Plaintiff asserts, Defendants had motive to commit fraud.

In the securities fraud context, the Court considers scienter pleadings holistically, meaning that the question is "whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." Tellabs, 551 U.S. at 322-23.  As the Sixth Circuit noted in the second appeal in Frank, the previous method of "reviewing each allegation individually before reviewing them holistically risks

9

losing the forest for the trees." Frank v. Dana Corp., 646 F.3d 954, 961 (6th Cir. 2011). Thus, the Court bases its decision on a "collective view of the facts." Id. This does not mean, however, that the Court cannot critically examine Plaintiff's allegations. It simply means that scienter is not a question to be answered on the basis of each allegation in a vacuum but, instead, the Court must answer whether, given the allegations as a whole, the Complaint allows the Court to draw a strong inference of scienter.

The allegations made by Witness 3 are Plaintiff's strongest allegations going to scienter. Distilling to the essentials, Witness 3 alleges that the accounting problems with Cokem-of which Defendants either were or should have been aware-were red flags and should have put Defendants on notice that their financial statements couldn't be true. However, even accepting as true the information attributed to her in the Complaint, that information does not lead to a strong inference that Defendants acted with the required state of mind, even when viewed in tandem with the other allegations in the Complaint. This is so for one simple reason: nothing in the Complaint shows a nexus between the allegations that Defendants were aware of red flags regarding Cokem and the reasons for the restatement. That is, even if Defendants knew or should have known that the Cokem account was potentially problematic given the issues with, for example, the collectability of the account, this simply does not reasonably

lead–and certainly does not strongly lead–to the inference that Defendants knew or should have known that the original financial statements were false. Plaintiff has not set forth a single allegation, let alone allegations leading to a strong inference of fraud, that the problems with the Cokem account had anything at all to do with the restatement, let alone that it was such an overwhelming contributor to the need for a restatement that the Court could rightly infer fraud from the existence of the problems identified by Witness 3. Without something drawing the connection between the Cokem problems identified by Witness 3 and the reasons for the restatement of the financials, the Cokem problems identified merely show, at most, that Zoo was financially mismanaged, not that Defendants fraudulently misled the public.

This conclusion does not change when the Court places the Witness 3 allegations in the context of the other allegations regarding scienter because those other allegations are simply not compelling, even when viewed collectively, nor do they provide any nexus between the restatements and the Cokem red flags. For example, Plaintiff points to the size of the restatement for support. However, as Defendants point out, the actual change in revenue recognition with the restated financials was only a three percent drop. Plaintiff would have the Court look to the restated net income and earnings per share numbers, but those are not tied by the allegations in the Complaint to the revenue-recognition

theory upon which Plaintiff proceeds, so those numbers are not helpful to the scienter inquiry. In addition, Plaintiff notes that Defendants Seremet and Fremed received regular internal reports. However, Plaintiff offers no allegations regarding the content of these reports, and their mere existence cannot possibly lend support to an inference of scienter.

Similarly, Plaintiff's allegation that the company had weak internal controls does not contribute to a collective sense that Defendants acted with scienter. This is so because, as Defendants note, the company publicly disclosed this fact and expressly warned that its accounting staff shortcomings could lead the company to have to restate its financials. Specifically, the company did not have adequate finance staff, a fact about which it was open in its public disclosures.[3] Indeed, it expressly warned investors that its inadequate staffing could lead to "a material misstatement to [its] annual or interim consolidated financial

---

[3] In its quarterly reports related to the original financial statements at issue, the company disclosed the following: "Our management has determined that we have a material weakness in our internal control over financial reporting related to not having a sufficient number of personnel with the appropriate level of experience and technical expertise to appropriately resolve nonroutine and complex accounting matters or to evaluate the impact of new and existing accounting pronouncements on our consolidated financial statements while completing the financial statements close process. Until this deficiency in our internal control over financial reporting is remediated, there is a reasonable possibility that a material misstatement to our annual or interim consolidated financial statements could occur and not be prevented or detected by our internal controls in a timely manner" (doc. 14).

statements", a warning that obviously came true when the company had to restate its financials. Coupled with those warnings was a statement that Defendants were committed to "addressing this matter in 2010" and that they had "engaged additional qualified personnel to assist in these areas" (doc. 14). Perhaps Defendants could have acted more quickly in addressing this known-and publicly disclosed-deficiency in their finance department, but being "negligent, or even remiss, in not diligently attempting to prevent [] accounting improprieties from occurring...does not give rise to a strong inference of scienter." In re The Goodyear Tire & Rubber Co. Securities Litigation, 436 F.Supp.2d 873, 895 (N.D. Ohio 2006), citing Comshare, 183 F.3d at 550. Far from supporting an inference of fraud, this public disclosure-that there was a problem, that it could lead to a restatement, and that the company was going to address it over the coming year-cuts against such an inference.

Plaintiff contends in a footnote in his response that he is "not required to plead the exact basis of the fraud, and even if Plaintiff's allegations do not correlate fact-for-fact, they suffice to raise a strong inference" (doc. 26, citing Winslow v. BancorpSouth, Inc., 2011 U.S.Dist. LEXIS 45559 *34-35 (M.D. Tenn. April 26, 2011)). First, Winslow does not support this proposition, and the particular citation used by Plaintiff speaks to loss causation not to scienter. Winslow, 2001 WL 7090820, *12 ("If a fact-for-fact disclosure were required to establish loss

13

causation, a defendant could defeat liability by refusing to admit the falsity of its prior misstatements.")(internal citations omitted)(emphasis added). Second, the Court is not requiring Plaintiff to "plead the exact basis of the fraud," but, in order to compel a strong inference of scienter from the facts presented in the Complaint, Plaintiff needed to have presented some factual connection between, at a minimum, the Cokem allegations and the need for the restatement.

To be clear: this is not a situation where the Court is faced with competing, equally plausible scenarios-with fraud on one side and simple mismanagement on the other. Were that the case, the Court would deny Defendants' motion because, when faced with equally strong inferences, a court should not grant a motion to dismiss. Frank, 547 F.3d at 571 ("[W]here two equally compelling inferences can be drawn, one demonstrating scienter and the other supporting a nonculpable explanation, Tellabs instructs that the complaint should be permitted to move forward."). On the contrary, there is only one strong inference that can reasonably be drawn from the allegations set forth in the Complaint, and it is that the company was financially mismanaged; it is not that Defendants acted with fraudulent intent or recklessly disregarded the truth.

Simply put, allegations of mismanagement-which is the only strong inference that can reasonably be drawn from the Complaint-are not enough to survive a motion to dismiss.

14

"Recklessness" is "highly unreasonable conduct which is an extreme departure from the standards of ordinary care"; it means disregard of a danger that, even if unknown to the Defendants, is "so obvious that any reasonable man would have known of it." PR Diamonds, 364 F.3d at 681. Plaintiff has not set forth allegations from which the Court could draw a strong inference that Defendants disregarded a danger that was so obvious.

Consequently, Defendants' motion is GRANTED (doc. 17) and this matter is closed.

SO ORDERED.

Dated: July 26, 2012                s/S. Arthur Spiegel
                                        S. Arthur Spiegel
                                        United States Senior District Judge